[Cite as *State v. Shoecraft*, 2018-Ohio-3920.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27860 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-375 |
| | : | |
| MARK A. SHOECRAFT, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of September, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Mark A. Shoecraft, Jr., appeals his conviction and sentence for the following offenses: two counts of murder (proximate result), in violation of R.C. 2903.02(B), both unclassified felonies, with both counts accompanied by three-year firearm specifications; one count of felonious assault (serious harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree, accompanied by a three-year firearm specification; two counts of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), both felonies of the second degree, with both counts accompanied by three-year firearm specifications; one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3) and (C)(4), a felony of the first degree, accompanied by a three-year firearm specification; one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; one count of having a weapon while under disability (prior drug conviction), in violation of R.C. 2923.13(A)(3), a felony of the third degree; and one count of aggravated trafficking in drugs (Schedule I or II), in violation of R.C. 2925.03(A)(1) and (C)(1), a felony of the fourth degree, accompanied by a one-year firearm specification. Shoecraft filed a timely notice of appeal with this Court on January 10, 2018.

**{¶ 2}** The incident which forms the basis for the instant appeal occurred on the night of January 31, 2017, when the victim, Eric Raglin, contacted an acquaintance, Mike Fox, in order to arrange the purchase of methamphetamine. At the time that he received the call from Raglin, Fox was riding in a motor vehicle with another individual, Damon Glenn. Earlier that day, Glenn had asked Fox, a "neighborhood mechanic," to perform some work on Glenn's vehicle. Glenn had picked up Fox in Vandalia, Ohio, and the two

men were traveling back to Glenn's house in Dayton so that Fox could repair the motor vehicle. After overhearing Fox's conversation with Raglin regarding the purchase of methamphetamine, Glenn called the defendant-appellant, Shoecraft, as according to Glenn's testimony, he knew that Shoecraft was in possession of methamphetamine for sale. Shoecraft informed Glenn that he did, in fact, have methamphetamine that he would sell to Raglin. Upon being informed of the availability of the methamphetamine, Raglin asked the men to meet him at a location on Basswood Avenue in Dayton, Ohio, in order to conduct the sale.

{¶ 3} Shortly thereafter, Glenn and Fox arrived at the Basswood Avenue location in Glenn's vehicle. Shoecraft arrived by himself in a blue pickup truck. Shoecraft's friend, Bryan Kenney, also arrived at the location in a separate vehicle. The men parked their vehicles on the south curb of Basswood Avenue in a row. Eventually, Raglin arrived at the location on foot, and Shoecraft handed him a plastic bag containing approximately an ounce of methamphetamine. Shoecraft informed Raglin that the price of the methamphetamine was $600. Without handing the methamphetamine back over to Shoecraft, Raglin stated that "his girl" had the money for the drugs in his car, which was parked a short distance up Basswood Avenue. All of the men then walked to where Raglin's car, a white Honda Accord, was parked between two other vehicles against the curb in front of an acquaintance's residence on Basswood Avenue.

{¶ 4} Upon reaching his vehicle, Raglin opened the driver's door and sat down in the driver's seat with the bag of methamphetamine. Raglin's girlfriend, Amanda Houchins, was sitting in the front passenger seat, and Raglin's dog, a pit bull, was sitting in the back seat of the vehicle. Shoecraft stood on the street partially inside the open

driver's door next to Raglin. Glenn stood on the driver's side of the vehicle in the area near the front left wheel of Raglin's vehicle. Fox stood on the driver's side of the vehicle behind Shoecraft and Glenn. Both Shoecraft and Glenn testified that they observed Houchins looking through her purse as if she was attempting to retrieve money to pay for the methamphetamine.

{¶ 5} Suddenly, Raglin put his vehicle into drive, turned the wheel sharply to the left, and drove quickly out of the parking space. Houchins testified that Raglin "veered to the left as if he was just going off from the parking spot normally." Tr. 84. Glenn and Shoecraft testified that they were in fear for their lives when Raglin began to drive away because they believed he was trying to hit them with his vehicle. Specifically, Shoecraft testified that he had to grab Glenn by his right shoulder and pull him out of the way in order for both of them to avoid being hit by Raglin's vehicle. Houchins testified, however, that there was no one standing in front of the vehicle when Raglin pulled out onto the street.

{¶ 6} After Raglin began to drive away, Shoecraft pulled a handgun out of his jacket pocket and began firing at the vehicle. Shoecraft admitted during his testimony that he could have run away from the scene to avoid any danger, but he chose to stand and fire his weapon at Raglin's vehicle. The record establishes that Shoecraft fired his handgun at the vehicle approximately seven times based upon spent shell casings recovered at the scene. We note that the handgun used by Shoecraft was never recovered by the police.

{¶ 7} Houchins testified that, upon hearing gunshots, she ducked her head down. Houchins also testified that, shortly after the shooting started, Raglin lost control of the

vehicle as it traveled down Basswood Avenue. The vehicle then crossed over the north curb of Basswood Avenue, crashed through some brush, and finally came to a stop after striking an iron railing in a parking lot off of Riverside Drive. Houchins testified that she tried to rouse Raglin, but he was unresponsive. Houchins testified that she exited the vehicle, ran back to her acquaintance's apartment, and hid in a closet. Houchins testified that she did not call 911 because she was in shock. After the shooting, Shoecraft, Glenn, Fox, and Kenney fled the scene.

{¶ 8} Based upon a report of gunshots in the area, police and medics were dispatched to the lot where Raglin's vehicle had been wrecked. Dayton Police Officer Stephen Lloyd testified that he observed a clearly deceased Raglin sitting in the driver's seat of the vehicle. As Raglin's body was being removed from the vehicle, Officer Lloyd observed that Raglin had a handgun concealed in the waistband of his pants that was not visible while he was sitting in the driver's seat. There was no evidence adduced at trial that Raglin brandished a handgun during the confrontation with Shoecraft and the other men.

{¶ 9} An autopsy was performed on Raglin by Montgomery County Chief Deputy Coroner Lee Lehman. Dr. Lehman testified that Raglin sustained flesh wounds to his left shoulder, chest, and right hand. Dr. Lehman also testified that Raglin was shot in the back of the neck. The bullet entered the back of Raglin's neck near the base of the skull and came to rest at the top of the middle of his brain. Dr. Lehman testified that if Raglin was slouched down in his seat, trying to avoid being shot while he was driving, this would account for the trajectory the bullet followed as it traveled through his brain. Finally, Dr. Lehman testified that the gunshot that struck Raglin in the head was fatal.

{¶ 10} Officer Ronald Christoffers, an evidence technician with the Dayton Police Department, testified that Raglin's vehicle had bullet strikes to the front driver's side window and door, to the rear driver's side quarter panel, to the window frame of the rear driver's side door, and to the rear license plate. Officer Christoffers testified that there were no bullet strikes to the hood of the vehicle nor the front windshield. Significantly, Officer Christoffers testified that all of the bullet damage to Raglin's vehicle came from the outside of the vehicle. Officer Christoffers also testified that, although the rear windshield of Raglin's vehicle had been completely shattered, he could not make a conclusive determination regarding whether it had been struck by a bullet. Nevertheless, Officer Christoffers testified that, based upon his experience, the bullet that struck Raglin in the head "had to" have traveled through the rear windshield because none of the other bullet damage to the vehicle would have accounted for Raglin's head wound. Shoecraft was arrested and taken into custody on the morning of February 1, 2017.

{¶ 11} When he was interviewed after being taken into custody, Shoecraft initially denied any involvement in the shooting, telling police that he never visited Basswood Avenue on the night of the shooting. After detectives informed Shoecraft that other witnesses, namely Glenn and Kenney, had given statements placing him at the scene, Shoecraft changed his story. Specifically, Shoecraft told police that he did drive out to Basswood Avenue to give Glenn methamphetamine to sell to Raglin, but he never got out of his truck and was not involved the shooting. Furthermore, Shoecraft never informed the police that Raglin tried to hit Glenn and/or him with a car. Additionally, Shoecraft did not tell police that he was ever in fear for his life during the incident. We note that, at trial, Shoecraft asserted during his testimony that he was unaware that "self-defense"

existed in Ohio. Shoecraft testified that this was the reason why he did not tell the police during his custodial interview that he only shot at Raglin because he feared being hit by the car.

{¶ 12} On February 13, 2017, Shoecraft was indicted for the following offenses: two counts of murder (proximate result), with both counts accompanied by three-year firearm specifications; one count of felonious assault (serious harm), accompanied by a three-year firearm specification; two counts of felonious assault (deadly weapon), with both counts accompanied by three-year firearm specifications; one count of discharge of a firearm on or near prohibited premises, accompanied by a three-year firearm specification; one count of carrying a concealed weapon; one count of having a weapon while under disability (prior drug conviction); one count of aggravated trafficking in drugs (Schedule I or II), accompanied by a one-year firearm specification; and one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a felony of the fifth degree, accompanied by a one-year firearm specification. At his arraignment on February 16, 2017, Shoecraft entered a plea of not guilty to all of the charges in the indictment. On July 17, 2017, Shoecraft filed a "Notice of Alibi" in which he stated that, at trial, he would present evidence that he was with his girlfriend, Ebone Parks, at the time of the shooting, and therefore could not have committed the alleged offenses.

{¶ 13} On July 19, 2017, Shoecraft waived his right to a jury trial in open court and signed a written waiver that was filed on the same day. Thereafter, the case proceeded to a two-day bench trial on October 24 and 25, 2017. At trial, Shoecraft argued that he acted in self-defense when he shot and killed Raglin as the latter drove away after stealing Shoecraft's methamphetamine. In a verdict entry issued on November 9, 2017, the trial

court found Shoecraft guilty on all of the counts in the indictment and their accompanying specifications, with the exception of the count of trafficking in cocaine. After merging several of the counts and specifications, the trial court sentenced Shoecraft for the following offenses: one count of felony murder (Raglin); one count felonious assault (deadly weapon, Houchins); one count of discharge of a firearm on or near prohibited premises; one count of carrying a concealed weapon; one count of having a weapon while under disability; one count of aggravated trafficking in drugs; and two three-year firearm specifications. Accordingly, the trial court sentenced Shoecraft to an aggregate sentence of 40 years to life prison.

{¶ 14} It is from this judgment that Shoecraft now appeals.

{¶ 15} Shoecraft's first assignment of error is as follows:

SHOECRAFT DID NOT VOLUNTARILY WAIVE HIS RIGHT TO A JURY TRIAL.

{¶ 16} In his first assignment, Shoecraft argues that the record establishes that he did not waive his right to a jury trial in a knowing, intelligent, and voluntary fashion.

{¶ 17} R.C. 2945.05 sets forth the manner in which a defendant may waive his or her right to a jury trial. *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 6. The statute provides as follows:

In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the

above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

R.C. 2945.05.

{¶ 18} Based on this statute, the Supreme Court of Ohio has identified five conditions that must be satisfied in order for a jury waiver to be valid. *Lomax* at ¶ 9. The jury waiver must be: "(1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *Id.* Trial courts must strictly comply with these requirements. *State v. Grier*, 2d Dist. Montgomery No. 23662, 2010-Ohio-5751, ¶ 15, citing *State v. Pless*, 74 Ohio St.3d 333, 337 and 339, 658 N.E.2d 766 (1996). (Other citation omitted.) "In the absence of strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *Pless* at 337, citing *State v. Tate*, 59 Ohio St.2d 50, 391 N.E.2d 738 (1979) and *State ex rel. Jackson v. Dallman*, 70 Ohio St.3d 261, 638 N.E.2d 563 (1994).

{¶ 19} While there must be strict compliance with the five conditions in R.C. 2945.05, we note that a written jury waiver need only substantially comply with the language suggested in R.C. 2945.05, making a verbatim recitation of the statutory language unnecessary. *State v. Webb*, 10th Dist. Franklin No. 10AP-289, 2010-Ohio-

6122, ¶ 26-27, citing *State v. Townsend*, 3d Dist. Marion No. 9-03-40, 2003-Ohio-6992, ¶ 16. (Other citations omitted.)

{¶ 20} R.C. 2945.05 must be read in conjunction with Crim.R. 23(A), which also governs the waiver of a defendant's right to a jury trial. *State v. Burnside*, 186 Ohio App.3d 733, 2010-Ohio-1235, 930 N.E.2d 372, ¶ 47 (2d Dist.). "Crim.R. 23(A) allows a defendant to waive his right to a trial by jury in serious offense cases provided that the waiver is made knowingly, intelligently, and voluntarily, and in writing." (Footnote omitted.) *Lomax* at ¶ 6. Specifically, Crim.R. 23(A) provides:

> In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney. In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.

{¶ 21} A "serious offense" is defined in Crim.R. 2(C) as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Therefore, in order to comply with Crim.R. 23(A), Shoecraft had to knowingly, intelligently, and voluntarily waive his right to a jury trial in writing. To meet this requirement, "some type of colloquy must occur between the defendant and the trial

court." *State v. Bell*, 2d Dist. Greene No. 2017-CA-8, 2017-Ohio-7512, ¶ 14, citing *State v. Anderson*, 1st Dist. Hamilton No. C-070098, 2007-Ohio-6218, ¶ 8.

**{¶ 22}** As the Supreme Court of Ohio has indicated:

* * * A written jury waiver is "presumptively voluntary, knowing, and intelligent." *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 37. Only a "plain showing that the defendant's waiver was not freely and intelligently made" will rebut that presumption. *Id.*, citing *Adams v. United States ex rel. McCann*, [317] U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

*State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 22.

**{¶ 23}** On July 19, 2017, a hearing was held before the trial court during which the following exchange occurred:

Trial Court: * * * This is actually assigned to Judge Krumholtz.[1] Judge Krumholtz asked me to take care of a couple of matters here one being a waiver of jury in this case; is that correct, [Defense Counsel]?

Defense Counsel: Yes, Your Honor.

Trial Court: All right. Mr. Shoecraft, let me go over a couple [of] things here with you, sir. It's my understanding in speaking with your counsel that you wish to withdraw your demand for a jury trial in this and proceed to have this matter resolved to the Court or to the Bench; is that your desire?

Shoecraft: Yes, sir.

---

[1] Montgomery County Common Pleas Court Judge Dennis J. Adkins presided over Shoecraft's jury waiver hearing while Judge Michael W. Krumholtz presided over the bench trial.

Trial Court: And you understand that all issues will be decided by the judge including issues of fact and law and sentencing, it'll all [be] the same person. You understand that[?]

Shoecraft: Yes, sir.

Trial Court: Have you had the opportunity to speak with [defense counsel] about that decision?

Shoecraft: Yes, sir.

Trial Court: Is there anything, at all, about the waiver of jury form that you have in front of you that you have any questions about?

Shoecraft: No, sir.

Trial Court: Okay.   Sir, if that is your desire to waive your jury in this case, I need you to sign that form here in open court, please.

Defense Counsel: He has signed the form, Your Honor.

The State: And just for the record.   It's the State's understanding its [sic] goes to all the counts in the indictment and all specifications.

Trial Court: Do you understand that, Mr. Shoecraft?

Shoecraft: Yes, Your Honor.

Trial Court: It goes to all issues.

(Counsel confers with Defendant)

Defense Counsel: Yes, he understands, Your Honor.

Trial Court: Is that correct, Mr. Shoecraft?

Shoecraft: Yes.

Trial Court: Okay.   The Court finds that the defendant knowingly,

intelligently and voluntarily waived his right to a jury trial in this matter, signing the form in open court. The Court has signed the form and I'll order that to be filed. * * *

Jury Waiver Hearing Tr. 3-4.

{¶ 24} The jury waiver form signed by Shoecraft also stated:

I hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of this Court. I have had an opportunity to consult with my attorney. I fully understand that under the laws of this Ohio and of the United States, I have a constitutional right to a trial by jury.

{¶ 25} Shoecraft argues that the record establishes that he "was not sufficiently apprised of how his guilt could have been decided." Shoecraft contends that neither the written jury waiver nor the record establishes that he was aware of the jury process, namely that his guilt would be decided by 12 jurors, that he could participate in the selection of the jurors, and that the verdict must be unanimous. In support of his argument, Shoecraft relies on language from the Sixth Circuit Court of Appeals in *United States v. Martin*, 704 F.2d 267 (6th Cir.1983), stating that "[a] defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 273.

{¶ 26} However, we note that the Sixth Circuit went on to hold that while "[k]nowledge of these essential attributes is generally sufficient to enable a defendant to make a knowing and intelligent decision," *id.*, a defendant's knowledge of these elements

is not "constitutionally required." *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir.1990). Rather, the dispositive inquiry is whether the defendant " 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.' " *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir.2004), quoting *Sammons* at 597.

{¶ 27} Upon review, we conclude that the jury-waiver requirements in R.C. 2945.05 and Crim.R. 23(A) were satisfied in this case. The jury waiver was made in open court, and Shoecraft signed a jury waiver form indicating that he "fully" understood that he had a constitutional right to a jury trial. "There is no requirement for a trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial." *State v. Jells*, 53 Ohio St.3d 22, 559 N.E.2d 464 (1990), paragraph one of the syllabus, citing CrimR. 23(A) and R.C. 2945.05; *accord Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002) (colloquy not constitutionally required). "The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel." *Jells* at 26. Therefore, on the record before us, Shoecraft has failed to establish that he did not waive his right to jury trial in a knowing, intelligent, and voluntary fashion.

{¶ 28} Shoecraft's first assignment of error is overruled.

{¶ 29} Shoecraft's second assignment of error is as follows:

THE TRIAL COURT ERRED BY REJECTING SHOECRAFT'S AFFIRMATIVE DEFENSES OF SELF-DEFENSE AND DEFENSE OF ANOTHER.

{¶ 30} In his second assignment, Shoecraft argues that the trial court erred when it rejected his affirmative defenses of self-defense and defense of another. Although Shoecraft phrases his argument in terms of whether the evidence was sufficient to prove he acted in self-defense and defense of another when he shot and killed Raglin, he is actually arguing that the trial court's decision to reject his affirmative defenses was against the manifest weight of the evidence.

{¶ 31} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 32} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 33} "Self-defense is an affirmative defense which the accused has the burden to prove by a preponderance of the evidence. R.C. 2901.05(A)[.] * * * 'In order to establish self-defense, a defendant must prove: (1) that the defendant was not at fault in creating

the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.' * * * " (Citations omitted). *State v. Kleekamp*, 2d Dist. Montgomery No. 23533, 2010-Ohio-1906, ¶ 52.

{¶ 34} "The affirmative defense of defense of another is a variation of self-defense. * * * Under certain circumstances, a person may be justified in using force to defend another person against an assault. However, the actor then stands in the shoes of the person he aids, and if the person aided is the one at fault in creating the affray, the actor is not justified in his use of force. * * * One who acts in defense of another must meet the criteria for self-defense." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 38, quoting *State v. Moss*, 10th Dist. Franklin No. 05AP-610, 2006-Ohio-1647, ¶ 13.

{¶ 35} In the instant case, the record establishes that, at the time Raglin attempted to drive away with the methamphetamine without paying, Shoecraft and Glenn were standing along the driver's side of the vehicle. Shoecraft stood on the street partially inside the open driver's door next to Raglin, and Glenn stood on the driver's side of the vehicle in the area near the front wheel. No one was standing in front of the vehicle when Raglin began to accelerate out of the parking spot. Shoecraft argued at trial that he acted in self-defense and in defense of another because he believed that he and Glenn were in danger of being run over by Raglin and killed.

{¶ 36} Upon review, we conclude that the trial court did not err when it rejected Shoecraft's affirmative defenses of self-defense and defense of another. Here, the trial

court could have reasonably found that neither Shoecraft nor Glenn was ever in imminent danger of death or great bodily harm. By their own admission at trial, Shoecraft and Glenn were standing along the driver's side of the vehicle when Raglin attempted to drive away. Raglin was not driving towards the two men. Rather, Raglin was driving away from Shoecraft and Glenn. Although Raglin turned the steering wheel hard to the left in order to exit the parallel parking space, Shoecraft and Glenn were never in position where the vehicle could have run them over.

{¶ 37} The evidence adduced at trial also failed to establish that Shoecraft had an objectively reasonable belief that using deadly force was the only means of escaping the questionable danger posed by Raglin attempting to drive away from the men. Glenn testified that after being "nudged" out of the way by Shoecraft, he was able to safely run away. As previously stated, Shoecraft admitted during his testimony that he could have run away from the scene to avoid any danger, but he chose to stand and fire his weapon at Raglin's vehicle. Additionally, the bullet that hit Raglin in the back of the neck and ultimately killed him was apparently fired by Shoecraft through the rear windshield of the vehicle. At this point, Shoecraft was ostensibly well behind the vehicle and in no danger of being hit.

{¶ 38} In *State v. Salyers*, 2d Dist. Montgomery No. 20695, 2005-Ohio-2772, we observed that the evidence established that the defendant shot the victim in the back. We held that "[s]uch evidence negates the theory of self-defense." Here, the factfinder could have reasonably concluded that Shoecraft shot Raglin in the back of the neck as Raglin was driving away, which was clearly not indicative of self-defense. Moreover, Shoecraft fired at Raglin's vehicle at least seven times, supporting a finding that Shoecraft

was not acting in self-defense or in defense of Glenn, but rather retaliating against Raglin for stealing the methamphetamine. Accordingly, the trial court did not err when it rejected Shoecraft's affirmative defenses of self-defense and defense of another.

{¶ 39} Shoecraft's second assignment of error is overruled.

{¶ 40} Shoecraft's third assignment of error is as follows:

THE TRIAL COUURT ERRED WHEN IT REJECTED VOLUNTARY MANSLAUGHTER, AN INFERIOR DEGREE OF THE OFFENSE OF MURDER.

{¶ 41} In his third assignment, Shoecraft contends that the trial court erred when it failed to find him guilty of voluntary manslaughter, an inferior degree of the offense of murder.

{¶ 42} Initially we note that during his closing argument, defense counsel seemingly misspoke when he ended his closing argument with a suggestion that the facts constituted "involuntary manslaughter." Specifically, defense counsel stated as follows:

* * * There's a car being driven directly at you about to run you down. I don't know how that could not be a cause of sudden passion. I don't know how that could not be serious provocation reasonably sufficient to incite Shoecraft into using deadly force. If he's not acquitted by self-defense, *the murder charge needs to involuntary manslaughter. * * *

{¶ 43} The language utilized by defense counsel, specifically his suggestion regarding "serious provocation reasonably sufficient to incite Shoecraft into using deadly force," establishes that defense counsel apparently intended to ask the trial court to consider voluntary manslaughter, rather than involuntary manslaughter. Thus, the trial

court, in its verdict, correctly analyzed the offense of voluntary manslaughter, not involuntary manslaughter.

{¶ 44} "In a proper case, a jury may consider, in addition to the offense actually indicted, inferior degrees of the indicted offense." *State v. Beatty-Jones*, 2d Dist. Montgomery No. 24245, 2011-Ohio-3719, ¶ 20, citing *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph one of the syllabus. "An offense is of an inferior degree if its elements are 'identical to or contained within the indicted offense, except for one or more additional mitigating elements.' " *Id.*, quoting *Deem* at paragraph two of the syllabus.

{¶ 45} Murder requires an offender to "purposely cause the death of another * * *." R.C. 2903.02(A). Voluntary manslaughter requires an offender to knowingly cause the death of another while "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *." R.C. 2903.03(A). Because "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements [,]" voluntary manslaughter is not a lesser-included offense of murder. *Deem* at 209; *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). Instead, voluntary manslaughter is an inferior degree of murder. *Shane* at 632.

{¶ 46} The analysis of voluntary manslaughter's mitigating element asks first an objective question and second a subjective question. The objective question is whether the victim's provocation was " 'sufficient to arouse the passion of an ordinary person beyond the power of his or her control,' " *Shane* at 635. "or described differently, whether the provocation was 'reasonably sufficient to bring on extreme stress and * * * to incite or

arouse the defendant into using deadly force,' " *Deem* at paragraph five of the syllabus. The subjective question is "whether this particular defendant was in fact acting under a sudden passion or in fit of rage." (Citation omitted.) *Id.* We have said that, "[w]hen analyzing the subjective prong of the test, 'evidence supporting the privilege of self-defense, i.e., that the defendant feared for his own personal safety, does not constitute sudden passion or fit of rage.' " *State v. Harding*, 2d Dist. Montgomery No. 24062, 2011-Ohio-2823, ¶ 43, quoting *State v. Stewart*, 10th Dist. Franklin No. 10AP-526, 201[1]-Ohio-466, ¶ 13; *see also State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998) ("Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.").

{¶ 47} In the instant case, the trial court declined to find Shoecraft guilty of voluntary manslaughter instead of murder because there was no evidence of provocation reasonably sufficient to bring on extreme stress and to incite or arouse Shoecraft into using deadly force against Raglin. The trial court found that Raglin's act of driving the car away while Shoecraft was standing inside the driver's side door touching the side of the car was not reasonably sufficient to incite the use of deadly force. As previously stated in our analysis of the second assignment, the evidence adduced at trial established that Raglin was attempting to drive away from Shoecraft and Glenn when he was shot. Raglin was not attempting to hit the two men with his vehicle.

{¶ 48} Furthermore, even if we were to assume serious provocation (an assumption without evidentiary support), Shoecraft testified that he acted out of fear when he decided to shoot at Raglin's vehicle:

Defense Counsel: Okay. Now I want you to tell the Court what you felt

when that car came toward you.

Shoecraft: I felt like I was going to be run over.   * * * [S]o *I instantly feared like I was going to be killed.*

Tr. 382.   At trial, Shoecraft consistently testified that he shot at Raglin's vehicle because he was afraid.   Nothing in Shoecraft's testimony about what Raglin did by driving away would lead a reasonable fact finder to believe that when he shot Raglin, Shoecraft was under the influence of a sudden passion or fit of rage.   Thus, the trial court properly refused to find Shoecraft guilty of the inferior degree offense of voluntary manslaughter. *See Beatty-Jones*, 2d Dist. Montgomery No. 24245, 2011-Ohio-3719, ¶ 23-30 (concluding the same where the defendant's testimony showed that he shot the victims out of fear, not under a sudden passion or in fit of rage); *see also State v. Stargell*, 70 N.E.3d 1126, 2016-Ohio-5653, ¶ 43-44 (2d Dist.) (trial court rejected jury instruction for voluntary manslaughter where the defendant testified that he shot the victim because he was afraid, not because he was under the influence of a sudden passion or fit of rage).

**{¶ 49}** Shoecraft's third assignment of error is overruled.

**{¶ 50}** Shoecraft's fourth assignment of error is as follows:

THE TRIAL COUR ERRED WHEN IT SENTENCED SHOECRAFT TO ALL HIS OFFENSES WHEN THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT.

**{¶ 51}** In his fourth assignment, Shoecraft argues that the trial court erred when it failed to merge his convictions for murder (Raglin), felonious assault (Houchins), carrying a concealed weapon, discharge of firearm on or near prohibited premises, having a weapon while under disability, and trafficking in drugs.   We note that the trial court did

merge the multiple murder and felonious assault convictions related to Raglin.

{¶ 52} R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 53} The Ohio Supreme Court clarified the applicable standard when determining whether offenses merge as allied offenses of similar import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892.

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple

offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 30-31.

{¶ 54} In *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, we stated the following:

[T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson*[, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the

Ohio Supreme Court applied in *Earley*. We see nothing in *Ruff* that alters or undermines the foregoing analysis about McGail's commission of murder and aggravated robbery involving the same conduct committed with the same animus. For the reasons set forth above, we conclude that the two offenses were not committed separately and were not committed with a separate animus or motivation. These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25 [and] ¶ 30-31.

*Wood* at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51, 60 (2d Dist.).

{¶ 55} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 56} Initially, we note that Shoecraft has waived all but plain error by failing to object to the failure of the trial court to merge his convictions at his sentencing hearing. *See State v. Rogers*, 2d Dist. Greene No. 2011 CA 0057, 2012-Ohio-4451, ¶ 5. However, failure to merge allied offenses of similar import is plain error. *Id*. In order to

prevail under the plain error standard, an appellant must demonstrate both that there was an obvious error in the proceedings and that but for the error, the outcome of the trial clearly would have been otherwise. *Id.*, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88.

{¶ 57} As previously stated, the trial court imposed sentence on Shoecraft for six counts. With respect to Shoecraft's convictions for felony murder of Raglin, felonious assault of Houchins, and discharge of a firearm on or near prohibited premises, we find that these offenses were not subject to merger. First of all, the felony murder count and the felonious assault count did not merge because the counts involved different victims. Shoecraft committed the felony murder against Raglin, while the felonious assault count identified Houchins as the victim.

{¶ 58} Furthermore, we recently held in *State v. Williams*, 2d Dist. Montgomery No. 27663, 2018-Ohio-1647, that a trial court did not commit plain error when it failed to merge convictions for discharge of a firearm on or near prohibited premises with felony murder and/or felonious assault.

> Williams was convicted and sentenced on one count of murder for causing Terion Dixon's death as a proximate result of committing felonious assault. He also was convicted and sentenced on one count of discharging a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), which provides: "No person shall do any of the following: * * * Discharge a firearm upon or over a public road or highway." Notably, *"[t]he victim of the offense of discharging a firearm upon or over a public road or highway is the public. This is because it is the act itself that is prohibited. The offense can be*

*completed with no one remotely near the location where the firearm is discharged upon or over the public road or highway. R.C. 2923.162(A)(3) is a statute intended to benefit the public good*[.]" *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770 (8th Dist.), ¶ 33; *see also State v. Carzelle*, 8th Dist. Cuyahoga No. 105425, 2018-Ohio-92 (applying *James*). Although Williams actually shot and killed Dixon, his act of firing a handgun across the roadway itself violated the statute, placed numerous people at risk, and harmed the public at large. Conversely, his murder conviction required harm to a particular victim and differed in the significance and the nature of the harm it addressed. At a minimum, we believe the offenses at issue are dissimilar enough to preclude a finding of plain error. Accordingly, the third assignment of error is overruled.

(Emphasis added.) *Id.* at ¶ 24.

**{¶ 59}** We also find that Shoecraft's convictions for having a weapon while under disability and carrying a concealed weapon were not subject to merger because the offenses were committed separately. "The intent, or animus, necessary to commit the crime of carrying a concealed weapon, is to carry or conceal, on the person or ready at hand, a deadly weapon or dangerous ordnance. The gist of the offense is concealment; * * * The gravamen of the offense of having a weapon while under disability, is to 'knowingly * * * acquire, have, carry, or use,' a weapon while under a legal disability. It may be concluded that there is a difference in the mental state required for both crimes * * *." *State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, ¶ 48, citing *State v. Nieto*, 101 Ohio St. 409, 426-427, 130 N.E. 663 (1920).

{¶ 60} Shoecraft, a person under disability, necessarily acquired a handgun sometime before concealing it on his person. *Young* at ¶ 49. Thus, the elements of proof for having a weapon while under disability were satisfied when Shoecraft acquired the firearm. *Id.* Shoecraft's subsequent conduct of concealing the handgun in his jacket pocket constituted a separate and distinct act from initially acquiring the weapon. *Id.* Therefore, Shoecraft's convictions for having a weapon while under disability and carrying a concealed weapon were not subject to merger.

{¶ 61} Moreover, Shoecraft's convictions for having a weapon while under disability and carrying a concealed weapon were not subject to merger with his convictions for felony murder, felonious assault (Houchins), and discharge of a firearm on or near prohibited premises. In order to fire his gun, Shoecraft had to first remove it from his jacket pocket, thereby rendering the weapon visible and not concealed. Additionally, Shoecraft did not acquire or possess the firearm with the immediate intent of committing the murder, felonious assault and/or discharge of a firearm on or near prohibited premises. *See State v. Grissom*, 2d Dist. Montgomery No. 25750, 2014-Ohio-857, ¶ 44 (finding a separate animus because the record was "devoid of any evidence establishing that [the appellant] acquired the gun with an immediate intent to fire at [the victim] and that he had no other reason for acquiring the gun"); *compare State v. Fairman*, 2d Dist. Montgomery No. 24299, 2011-Ohio-6489, ¶ 67 (finding "the crimes were not committed separately or with a separate animus because the evidence shows that [the appellant] obtained the gun with the immediate intent of shooting [the victim]; he had no separate animus in acquiring possession of the gun").

{¶ 62} Finally, Shoecraft's conviction for drug trafficking was also not subject to

merger with any of his other convictions because it was committed separately and constitutes a separately identifiable harm. By the time Shoecraft decided to pull out his gun and start firing, he had already given Raglin the bag of methamphetamine. Furthermore, drug trafficking clearly involves a separate and identifiable harm from offenses stemming from an individual possessing and firing a gun at an occupied vehicle on a public street.

{¶ 63} Therefore, we find that the trial court did not err when it did not merge Shoecraft's convictions for murder (Raglin), felonious assault (Houchins), carrying a concealed weapon, discharge of firearm on or near prohibited premises, having a weapon while under disability, and trafficking in drugs, because these offenses were not allied offenses of similar import.

{¶ 64} Shoecraft's fourth assignment of error is overruled.

{¶ 65} Shoecraft's fifth and final assignment of error is as follows:

SHOECRAFT'S CONVICTION FOR FELONIOUS ASSAULT AGAINST HOUCHINS IS NOT SUPPORTED BY SUFFICIENT EVIDENCE, NOR SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 66} In his final assignment, Shoecraft argues that his conviction for felonious assault against Houchins was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 67} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007 CA

99, 2008-Ohio-4636, ¶ 12.

{¶ 68} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. A claim that a verdict was against the manifest weight of the evidence involves a different test. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.* at ¶ 71, citing *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 69} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 70} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510.

{¶ 71} In the instant case, the State was required to prove each and every element of the felonious assault of Houchins with a deadly weapon, pursuant to R.C. 2903.11(A)(2), which states in pertinent part:

(A) No person shall knowingly: * * * (2) [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *.

{¶ 72} R.C. 2901.22(B) defines "knowingly" as follows:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.

{¶ 73} "Deadly weapon" is defined in R.C. 2923.11(A) as follows:

Deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

{¶ 74} In the instant case, Shoecraft testified that he observed Houchins sitting in the front passenger seat of Raglin's vehicle. As Raglin drove away without paying for the methamphetamine, Shoecraft fired at least seven shots from a handgun at Raglin's vehicle. However, Shoecraft argues that because he only intended to shoot at Raglin, he could not be convicted for felonious assault against Houchins.

{¶ 75} "[W]hen an offense is defined in terms of conduct towards another, then there is a dissimilar import for each person affected by the conduct." *State v. Snowden*, 2d Dist. Montgomery No. 17785, 2000 WL 20884 (January 14, 2000), citing *State v. Phillips*, 75 Ohio App.3d 785, 790, 600 N.E.2d 825 (2d Dist.1991). In *Phillips*, the defendant was convicted of five counts of felonious assault for injuring multiple victims in

a drive-by shooting. On appeal, we rejected his argument that the crimes were allied offenses of similar import. We stated that, because R.C. 2903.11(A)(2) defines felonious assault "in terms of the harm, or potential harm, visited upon another, there exists a separate, and dissimilar import with respect to each person subject to that harm or risk of harm." *Id.* at 790.

{¶ 76} As in the *Phillips* case, we apply the specific definition of felonious assault as being directed to "another," thus potentially encompassing both of the occupants in the car, Raglin *and* Houchins. Furthermore, it is reasonable to assume that one who fires multiple shots from a gun into a moving car with two occupants knows that there is a "significant possibility" that more than one person could suffer physical harm as a result of his conduct. Even if Shoecraft's stated intent was to shoot only Raglin, given Houchins's close proximity to Raglin inside the front passenger compartment of the vehicle, it was not unreasonable for the trial court to conclude that Shoecraft's conduct also constituted an attempt to cause physical harm to Houchins by means of a deadly weapon. Accordingly, Shoecraft's conviction for felonious assault against Houchins was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 77} Shoecraft's fifth and final assignment of error is overruled.

{¶ 78} All of Shoecraft's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Ben M. Swift
Hon. Michael W. Krumholtz